## STOFFEL v. W. J. McCAHAN SUGAR REFINING & MOLASSES CO.

District Court, E. D. Pennsylvania. November 9, 1929.

No. 29.

Mortimer W. H. Cox, of Philadelphia, Pa., for plaintiff.

Louis Wagner, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. Again we have a ruling delayed through an overlooking of the fact that the briefs we were awaiting had been submitted. We appreciate the act of counsel in calling our attention to the oversight.

■ This proceeding is in admiralty, but the libelant's theory of his cause of action is based upon section 33 of the Act of Congress of June 5, 1920 (46 USCA § 688). The general law maritime has its principles by which we are guided in determining the right of those "who go down to the sea in ships" to recover for injuries received just as every other system of law has its principles. There is no specific power conferred by our Constitution upon Congress to legislate in causes maritime beyond the tenth and eleventh powers and the eighteenth general power "to make all laws * * * necessary and proper for carrying into execution * * * all other powers vested by this Constitution in the Government of the United States," etc. Const. art. 1, § 8. The judicial power is, however, extended by the second section of article 3 to inter alia "all cases of admiralty and maritime jurisdiction." It is to these rather than to the commerce clause (article 1, § 8, cl. 3) that Congress owes its control over the maritime law which is thus a subject withdrawn from the control of the state laws. The law of a state, as, for illustration, that of Pennsylvania, is to be found in its statutory (inclusive of its constitutional) enactments as interpreted by its courts and in absence of statute law in the rulings of its courts. Its laws are in consequence its statute or written and its judge-made laws, or leges non scripta. The law of the United States is to be found in its Constitution and the acts of Congress passed in pursuance thereof, and in its treaties all as interpreted by its courts, and in those matters specially committed to the judicial power in the rulings of its courts. The United States has thus only a written law, except in these latter matters, in which it also has a judge-made law. The judge-made laws of the state may be changed by the state Legislature, so far as its Constitution permits, and so likewise the maritime law of the United States may, generally speaking, be changed by Congress. The purpose of the cited 1920 amendment was to give at their option to injured seamen the same jury trial remedy given to injured railroad employees engaged in interstate commerce, and, in addition, to change the law maritime in such personal injury cases by reference to the railroad employees act (45 USCA §§ 51–59), to which it is thereafter to conform, if the injured seaman elects to pursue his remedy in admiralty. This we learn from the case of Panama v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748.

■ Among the changes made, the principle which was a part of the law maritime, as it is of the common law, known as the fellow servant rule, is no longer applicable, and does not constitute a defense, and in actions brought at common law the defense of contributory negligence can no longer be interposed as a defense; the admiralty doctrine of apportioning damages proportionately to the negligence which contributed to the injury being substituted for it. In the features not thus changed the law maritime remains as it was. This had for one of its principles what is known as the doctrine of "assumption of risk." The basis of the doctrine must be understood before the significance of the phrase can be fully grasped. There are dangers which are unavoidable in many employments because they are what are called inherent, which the exercise of no care can eliminate. The risk of hurt involved in such dangers the employee is said to assume. The real basis of the nonresponsibility of the employer is seen, however, to be the absence of any negligence on his part. Negligence is never imputed to any one in advance of the negligent act nor in this sense anticipated. Hence the saying that no one assumes the risk of the negligence of another. In a sense, of course, this is true, and yet the negligence of an employer may exist and be present, which the employee in a true sense may be said to have assumed.

■ There is another principle of the law of negligence which has application. There must not only be negligence, but the negligence which is present must have contributed to the injury sustained. Although existent, if it did not contribute to the injury, notwithstanding that it is negligence, it is not actionable negligence. This will be found to be the real basis of the nonresponsibility of the employer in this latter type of "assumption of risk" cases. As an illustration, there may be standing rigging which it is the duty of the employer to maintain in good safe condition. He may negligently fail in this duty, or the rigging may have been rendered unsafe by his own act of commission. If a rigger is asked to go aloft to replace it, its condition being fully made known to him, and the rig-

ger undertakes the replacement, mistakenly thinking he can do the work with safety, the employer is not liable. The employee may be said to have assumed the risk, but the real ground of nonliability is that the negligence of the master was not the proximate cause of the injury. There is at least one other qualification of the assumption of risk doctrine into which we need not go.

We have something very much like this in cases of contributory negligence. Under the act of Congress and in admiralty this is no defense (except pro tanto as to damages), but, if the sole, or what is called the proximate, cause of the damage, is what is known as contributory negligence or the negligence of the person injured, such contributory negligence is sometimes said to be a defense. So it without doubt is, but its real basis is the absence of any negligence on the part of the employer which contributed to the injury; the sole cause of it being the fault or negligence of the person hurt.

With these distinctions in mind, it is clear that the doctrine of "assumption of risk" has no application to the fact situation here presented. We have before us, according to the theory of the libelant, a clear case of acts of negligence on the part of coemployee or fellow servant, and, according to the theory of the respondent, no acts of negligence on the part of any one, unless it be that of the libelant himself. The cause is in consequence ruled by the fact finding to be made.

A very broad general outline of the fact situation will most clearly present the points upon which the respective parties rely. We can easily visualize this situation. A ship was discharging her cargo. It had to be hoisted out of the hold and then swung by a boom over the side of the ship to the pier or wharf. For convenience in handling it was dropped directly into cars or trucks which were brought on the wharf within reach of the ship's tackle. There was at the sides of the ship the usual raised rail construction. To unload directly into these cars made it necessary to hold what was being unloaded until a car was ready to receive it. It was in consequence so handled that the final lift over the rail and the swing shoreward was not made until the man stationed at the rail signaled the winchman so that he might be able to get clear of the swing. If the swing started without warning to him, there was danger that he be caught between the draft and the rail and be there crushed and injured. This, according to the plaintiff's theory, is what happened. The winch was started without a signal and without warning, and the plaintiff was so caught, thereby sustaining the injuries of which he complained.

The defense is that the signal was given so that no negligence is attributable to any one, and, even if the winchman was in fault, the danger to plaintiff was not eliminated by the winchman awaiting the signal, but the plaintiff might have been caught, and was in fact caught, between the draft and the rail either because this was unavoidable or because the plaintiff was lax in getting out of the way. This situation provokes the comment before made that the cause of the injury was the negligence of the winchman or that it occurred without negligence on the part of any one, unless it be that of the plaintiff as the sole cause of what happened. The fact of signal or no signal is in that state of doubt which always arises out of the sharp contradiction present in most negligence cases. We dispose of it by the finding that the signal was not given. The man hurt knows whether he gave the signal. There is nothing which would justify us in the finding that he is telling a deliberate untruth. It is easy for any one doing an off-repeated thing to think that what he has done he has done in the usual way. Some help to a finding is afforded by the fact that the winchman did not understand English. He was, however, a man of intelligence. He might notwithstanding have been mistaken in what he took for a signal. This may be a circumstance which cuts both ways.

We make the further findings that the injury was not unavoidable nor was the plaintiff guilty of contributory negligence. The injury was not unavoidable, because the movement was repeated many times without mishap.

There is nothing upon which to base a finding of contributory negligence. If the movement of the draft was unlooked for, and hence unexpected, it is easy to understand how and why the libelant was caught. There was no negligence in his act of standing by, although in reach of the swing of the draft, because he was where his duty required him to be. This results in a finding of negligence on the part of the respondent with no finding of contributory negligence, and brings us to the question of damages. Upon this subject he cannot refrain from a comment. If there is any subject upon which the trial tribunal judge or jury needs all the aid which can be given, it is upon this question of damages, and yet so obsessed are most courts with the danger of going wrong that they refuse to the jury aids which might direct them in going right. To a jury or judge is committed the duty of finding a sum, but they are denied the benefit of the expression of any inference drawn from the evidence of what that

sum should be. Counsel in this cause have been very chary (and we understand why they are so) in what they have to urge on the question of damages, the very subject on which we stand most in need of assistance. Speaking for ourselves, we not only would not resent, but invite, the fullest discussion and the freest expression of opinion from counsel on this subject of damages.

Without going into the elements of damage upon a consideration of the whole case, we find damages in the sum of $3,750.

To give definiteness of date to the judgment entered, leave is granted to enter judgment for the sum of $3,750 debt, with interest from the date of the filing of this opinion, with costs.